THE PEOPLE, *ex rel.* William Mitchell and others, commissioners of highways of the town of Greenfield, *vs.* ZIMRI LAWRENCE and others.

The writ of *certiorari*, in its office of removing final adjudications for review, possesses all the characteristics of a writ of error under our former system of practice, and performs the same office, as to inferior summary tribunals, that a writ of error did to an inferior court of record.

The common law *certiorari*, proper, removes only the record, or entry in the nature of a record, of the proceedings of the court below, whereby only the jurisdiction and the regularity of its proceedings are reviewed. But when the writ is authorized by statute, the authority of the court is not limited to questions of jurisdiction and regularity. It has power also to examine, upon the merits, every decision of the court, or officer, upon questions of law, and to look into the evidence, and affirm, reverse or quash the proceedings, as justice shall require.

The writ may properly issue to review the action of a jury in the reassessment of damages under the highway act, on appeal from the decision of commissioners appointed by a county judge.

The act of the legislature "in relation to the plank road law in the county of Saratoga," passed February 27, 1864, which enacts that "if any plank road in Saratoga county, used for six years, shall be abandoned, or its charter expire by its own limitation, or forfeiture, such plank road, and its right of way, shall become and is hereby declared a public highway," and makes it the duty of the commissioners of highways of the town to take the same measures for appraising the reversionary interest of the owners whose lands were taken for such plank road, &c., as are required by the statute in relation to the appraisal of damages for laying out public highways, &c., is not unconstitutional.

It is not in conflict with any express provision of the constitution, nor an infringement of any natural right.

Statutes free from these objections cannot be declared void by the courts. Within this limit, the legislative will is sovereign.

Wherever there are more than one commissioner of highways, in a town, notice of appeal from an assessment of damages, under the highway act, must be served on each and all of the commissioners. If there are three commissioners, service upon one alone is not sufficient.

This notice and service is a condition precedent to jurisdiction. Without it, no authority exists for drawing and summoning a panel of jurors, and the justice has no authority in the premises; nor have the jurors summoned and drawn, any jurisdiction of the subject matter.

The legislature having seen fit to exercise its power of eminent domain, by dedicating abandoned plank roads to the public as highways, the interest which reverts to the original owners of the land, on the abandonment of a

The People *v.* Lawrence.

plank road, includes everything—the soil, the fences thereon, the right of way, and all the advantages, if any, arising from its former use.

It is this property which the legislature has dedicated to the public; and it is this interest which is required to be appraised and compensated for. Hence, it is proper for the jury summoned to reappraise the reversionary interest of the land owners along the line of an abandoned plank road, on appeal from an appraisement made by commissioners appointed by the county judge, to take into consideration the cost of fencing the road, keeping the fences in repair, and the inconvenience to the use of the land arising from the necessity of crossing and recrossing such road.

THIS is a common law certiorari, brought to review the action of a jury in the reassessment of damages, under the highway act.

The facts are these: A plank road company was organized in Saratoga county, under the act of 1847; after procuring the right of way, it constructed a road and had it in use in 1852; in May, 1867, it abandoned a certain portion thereof, and the highway commissioners of the town where located applied to the county judge and had commissioners appointed to appraise the reversionary interest of the owners along its line. The commissioners met and, on due notice to all, fixed upon a valuation. The owners being dissatisfied, served a notice of appeal on the town clerk and on *one* of the *three* highway commissioners, demanding a jury, and stating that a jury would be drawn by the clerk of an adjoining town on a day named; that on said day a jury was drawn, a justice of the peace issued a summons to compel their attendance, handed the same to a constable for service, and the same was duly served. Neither of the commissioners not served had any knowledge or information of such appeal until after the jury was drawn. On the day named in the summons, eleven of the twelve jurymen summoned appeared, and six were drawn to sit in the matter. The commissioners appeared on this day, and in due time objected to the proceedings: 1st. That the jury could not be drawn until all the persons summoned appeared. 2d. That the notice was insufficient,

The People *v.* Lawrence.

because not served on all three commissioners. 3d. The jury had no jurisdiction to entertain the proceedings. 4th. The statute authorizing the proceeding was void. The justice ruled against these objections, and the commissioners excepted. The jury were then sworn, proceeded to view the premises and receive evidence. The evidence offered by the land owners was objected to as irrelevant and improper, and as not presenting the true rule for appraisement; but the justice and the jury held they had no right to entertain the motion, and so the evidence was taken, under protest. Evidence was then given of the cost of fencing the road and keeping it in repair, and the inconvenience of its use by reason of said road. It appeared that said road was already fenced; that the fences belonged to the owners, and that the expense had been included in the damages paid the owners by the plank road company. The commissioners again renewed their objections, and demanded a decision, but it was refused. The jury made an award, in which they included the expense of fencing, keeping the same in repair, and the inconvenience in the use of the farm, doubling the award made by the commissioners of appraisement.

The highway commissioners are the relators in this proceeding, and are owners of real and personal estate in said town liable to taxation.

*L. Varney,* for the relators. I. The writ of certiorari was properly issued. It was brought at the suit of the people on relation of the individuals. The individual names of the commissioners of highways are properly inserted in the writ. (*Overseers of the Poor of Granville* v. *Webster,* 2 *How. Pr.* 187. *Wildy* v. *Washburn,* 16 *John.* 49. *The People* v. *Van Alstyne,* 32 *Barb.* 131.)

II. There is no other remedy whereby the proceedings can be reviewed, except by the writ of certiorari, and this writ will issue to review proceedings of turnpike assessors,

and also to review assessments made by appraisement of the value of land taken by a railroad company. This court will also review the proceedings and evidence, for the purpose of discovering whether or no the damages are correct, or made upon an improper basis, even where they are authorized by statute finally to hear and determine. (*Le Roy* v. *Mayor &c.*, 20 *John.* 429. *Hill* v. *Mohawk Railroad Co.*, 5 *Denio*, 206; *S. C.*, 3 *Seld.* 152, 182. *Lawton* v. *Com. of Highw. of Cambridge*, 2 *Caines' R.* 179. *Bradhurst* v. *President and Directors*, 16 *John.* 8, 13. *People ex rel. Van Rensselaer* v. *Van Alstyne*, 32 *Barb.* 131. *King* v. *Bagshaw*, 7 *T. R.* 363. 8 *id.* 542.) In the case of *Carter* v. *Newbold*, (7 *How. Pr. R.* 166,) Justice Strong says, this court should abstain from interfering with the decision of inferior tribunals in cases within their jurisdiction on questions of fact; but they are bound to interfere to correct mistakes in the law bearing upon the merits.

III. A certiorari will lie on the behalf of the commissioners, to remove the proceedings into this court, the right to bring a certiorari being reciprocal and belonging as well to the commissioners as to the appellant. (*Com'rs of Highways of Kinderhook* v. *Claw*, 15 *John.* 537.)

IV. On a common law certiorari to remove proceedings into the Supreme Court, the same must be served upon the clerk with whom the papers are filed. (*Hill* v. *Mohawk Railroad Co.*, 3 *Seld.* 152. *Com'rs of Kinderhook* v. *Claw*, 15 *John.* 537. *The People ex rel. Reynolds* v. *City of Brooklyn*, 49 *Barb.* 136.) It cannot be served on the justice who issued the summons. (*Pugsley* v. *Anderson*, 3 *Wend.* 468.)

V. It is insisted that this writ was properly issued and made out, and the service correct; but if there are any defects, either in the issuing or title, it may be amended. (*The People ex rel. Strait* v. *Steuben C. P.*, 5 *Wend.* 103. *Bird* v. *Silsbie*, 1 *Cowen*, 582–88. *Mott* v. *Com'rs of Highways of Rush*, 19 *Wend.* 64. *Kissam* v. *Morris*, 2 *id.* 258.)

VI. It is claimed by the commissioners that the jury had

The People *v.* Lawrence.

no jurisdiction to reassess the damages of the land holders, on the grounds: 1st. That service of the notice of appeal was only made upon one of the commissioners of said town, and the other two commissioners knew nothing of drawing the jury. 2d. That only eleven jurors appeared from which to draw the panel, and only that number put in the box. By the statute of 1847, chap. 455, § 3, upon an appeal for a reassessment of damages by a jury, any person conceiving himself aggrieved, or the commissioner or commissioners on the part of the town, if feeling dissatisfied by any such assessment, may, within twenty days after the filing thereof as aforesaid, signify the same by notice in writing, and serving the same on the town clerk, and on the opposite party, that is, the persons for whom the assessments were made, on the commissioner or commissioners of highways, as the case may be. In this case there are three commissioners, and one cannot act when there are three. It clearly was not the duty of Mitchell to notify the other two commissioners of the service of notice of appeal; it was no part of his official duty to assist said landholders in perfecting their appeal. Therefore there was no appeal taken in this case. Any act that Mitchell should do by virtue of the appeal, would be void. It requires three commissioners to make an order or transact any business (or the notice to the third, and the subject of deliberation embraced in the notice.) All three are but one body. (*Fitch* v. *Com'rs of Highways of Kirkland*, 22 *Wend.* 132. *The People ex rel. Dann* v. *Williams and others, Commissioners of Highways of Avon*, 36 *N. Y. Rep.* 441.) It was held in the case of the *Com'rs of Highways of Kinderhook* v. *Claw*, (15 *John.* 537,) that on an appeal from the commissioners of highways relative to laying out, altering &c. a highway, the appellant must give notice of the appeal to the commissioners, and if such notice was not given, the commissioners may bring a certiorari, on which the proceedings on appeal will be re-

versed. (*Bradhurst* v. *The President and Directors*, 16 *John.* 8–12. 7 *Barb.* 416. *Stewart* v. *Wallis*, 30 *id.* 344.) If the court has no jurisdiction, consent will not give it. (3 *Caines' Rep.* 129. *Case of Ferguson*, 9 *John.* 239. *The People ex rel. Stephens and Tallman* v. *Commissioners*, (36 *Barb.* 222. *The People ex rel. Lord* v. *Robertson*, 26 *Hom.* 90.)

VII. The commissioners' affidavits show that they own real estate, and are tax-payers in the town of Greenfield. They also show that Debrat Peck owns the fences on both sides of this road, and that Wing, her brother, received $255 damages, by the road going through the farm, he then being owner. Lawrence received, as damages, $250 from the plank road. The evidence shows that the land owners, when the road was built, received a little over $3000 for their damages, and they now seek unjustly to recover the same again, when the evidence shows the road bed along the line of this road in question is not worth any thing. (*Ex parte* v. *Mayor of Albany*, 23 *Wend.* 277.)

VIII. A large amount of the evidence introduced by the landholders was for the purpose of showing the value of building and keeping in repair the fences along the line of the road in question, and the damages to the several farms through which the road passes, which was objected to by counsel for the commissioners. The fences have always belonged to the land owners, and did before the road was abandoned, and since it was abandoned. The fences did not revert, and could not, for the adjoining owners were the unqualified and absolute owners and possessors thereof. No reversion can be had where the highest estate already exists. This argument is too plain and simple to require authorities in support of the same; hence the proof of building and maintaining was wrong, and a matter they had no right to investigate. The same remarks apply to proofs of the damages to the several farms through which the road passes, as the owners had already been compensated. Hence the court will inquire into the principles

upon which the jury assessed the damages, and if they were erroneous the whole assessment should be set aside. (*Baldwin* v. *Calkins*, 10 *Wend.* 166. *Stone* v. *Mayor of New York*, 25 *id.* 157.)

IX. These proceedings are irregular and void, and are without authority, and came into existence by mistake, and upon ignorance of the facts (probably caused by the law of 1864, chap. 25, which is clearly unconstitutional.) This court is clothed with jurisdiction at common law, as well as by statute. Under the Code, the equitable rights of the parties, as well as the legal, are to be considered. (Section 69.) This court has the power, and it is their bounden duty, not only to set aside the action of the jury and their award of damages, but to set aside and declare null and void the award of damages made by the commissioners of appraisal. The statute of 1864, for the appraisement of reversionary interests, after the abandonment, refers to plank roads constructed under the provisions of "an act to provide for the incorporation of companies to construct plank roads, and of companies to construct turnpike roads," passed May 7th, 1847. This statute of 1864 declares that in case of abandonment or the expiration or forfeiture of the charter of a plank road company, "such plank road and its right of way shall become and is hereby declared a public highway." Section 2 of said act, after reciting the abandonment, requires the commissioners of highways "to take the same measures for appraising the reversionary interest of the owners whose lands have been thus taken, as are required by the statute in relation to the appraisal of damages in laying out public highways in this State, and the damages thus ascertained, with the expense of the appraisal, shall be a charge upon the town wherein the lands are situated, to be levied and collected in the same manner as other town charges," for laying out public highways. This statute does not say that the land owners have an interest in the road, nor that they have, or will

have, a reversionary interest. And the only ground for any interest in this road after abandonment by the company, is inferential from section 2 of said act. There is no repealing clause in this statute, and the same is not in conflict with the statute of 1854, chap. 87, § 1, which provides that the directors of any plank road company, or turnpike company, formed under the act passed May 7th, 1847, after pointing out the manner of the declaration of surrender, in abandoning said road by the company, says : "Such declaration and consent shall be filed and recorded in the clerk's office of the county in which the part or parts of said road abandoned shall be situated, and thereupon the plank or turnpike road, or the portion thereof so surrendered, shall cease to be the road or property of the company, and revert and belong to the several towns through which it was constructed." This cannot apply only to the abandonment of the plank road constructed upon a public highway, but it certainly applies to the abandonment of a plank road where it was originally laid out and constructed through a man's farm. This was the construction put upon this statute by the attorney and counsel for the commissioners of highways, before the commissioners of appraisal, and also the jury, although the counsel for the landholders argued that it did not in any sense apply to the laying out and constructing a plank road through a man's farm where there was no public highway. As long ago as 1838, (chap. 262,) a statute was passed, that "whenever any turnpike corporation shall become dissolved, or the road discontinued, its road shall become a public highway, and be subject to all legal provisions regulating highways." Hence the town of Greenfield, upon the abandonment of said road by the company, succeeded to all their right, title and interest in said road, the same became a public highway, and nothing reverted to the land owners. All the interest the plank road company acquired in and to said lands was a right of way

through said lands for traveling purposes or easement, which was for the public use. These land owners or their grantors have been paid for that use; or if not paid it was donated for that purpose; but in this case they were fully paid, and now, after the abandonment of said road by the company, it is still used for a public highway, an easement for traveling purposes, and no change made, only it is controlled by different persons or officers. The case of *Heath* v. *Barman* (49 *Barb.* 496) is the law of this case, and clearly shows that these land owners are not entitled to any compensation whatever, and that they now have no more interest or right in the road in question than they had when the plank road company was in full force and operation.

XII. This road, upon its abandonment by the plank road company, belonged to the town, and the town became the actual owner and possessor thereof for a public highway. The town is not estopped from claiming on this argument, as heretofore, that the land owners have no claim to or interest in the road, or right to demand damages anew. A party in possession of lands recognizing the title of a claimant, and agreeing to purchase, may subsequently deny such title, set up title in himself, and show that his acknowledgment was produced by imposition, or made under a misapprehension of his rights. (*Jackson* v. *Spear*, 7 *Wend.* 401. *Jackson* v. *Cuerden*, 2 *John. Cases*, 353.) The above cases are stronger than this, for here the commissioners of highways have never agreed to pay the land owners; for nothing reverted under the statute of 1864 to the said land owners.

XIII. There has been nothing done by the town to give the respondents a greater interest in this road than they had at the time of the abandonment. They have only, under a misapprehension of the facts, taken, as they supposed, legal means to recover this road for the town. And

by this step no acknowledgment of any interest in the respondents has been made. The town have, in fact, been trying by this litigation to recover what actually belongs to them, and of which they are in possession. By doing this they have surrendered none of their rights which they acquired upon the abandonment of said road by the company. The respondents have not lost or been damaged by any act of the commissioners of the town. The cases of *Lansing* v. *Montgomery*, (2 *John.* 382,) and *Jackson ex dem. Jones* v. *Brinckerhoff*, (3 *John. Cases*, 101,) show that *estoppels* are not favored in law, and will not be indulged in when, as in this case, they would produce injustice. (Confirmed by *Williams* v. *Jackson*, 5 *John.* 491.) Even ignorance or mistake will prevent an estoppel. (*Griffith* v. *Beecher*, 10 *Barb.* 432, *and cases there cited. Sparrow* v. *Kingman*, 1 *Comst.* 242. *Averill* v. *Wilson*, 4 *Barb.* 180. *Bigelow* v. *Finch*, 11 *id.* 498. *Germond* v. *The People*, 1 *Hill*, 343. *Borst* v. *Corey*, 16 *Barb.* 136. *Cadwell* v. *Colgate*, 7 *id.* 253. *Reynolds* v. *Lounsbury*, 6 *Hill*, 534.) The respondents had as much knowledge of the facts and law as the commissioners of the town, and they were not misled or deceived in any particular as to their rights. (*Brewster* v. *Striker*, 2 *Comst.* 19. *Lewis* v. *Woodworth*, *Id.* 512. *Cohoes Co.* v. *Goss*, 13 *Barb.* 138. *Jackson ex dem. Whitlocke* v. *Mills*, 13 *John.* 463. *McCoon* v. *Smith*, 3 *Hill*, 147. *Champlain &c. Railroad Co.* v. *Valentine*, 19 *Barb.* 484. *Dwight* v. *Peart*, 24 *Barb.* 55. *Jackson ex dem. Thurman* v. *Bradford*, 4 *Wend.* 619. *Jewett* v. *Miller*, 6 *Seld.* 402. *Jewell &c.* v. *Harrington*, 19 *Wend.* 471. *First Baptist Society* v. *Rapalee*, 16 *id.* 605. *Allen* v. *Roosevelt*, 14 *id.* 100. *Child* v. *Chappell*, 5 *Seld.* 246. *Lawrence* v. *Brown*, 1 *id.* 394. *Carpenter* v. *Stilwell &c.*, 1 *Kernan*, 61. *Lounsbury* v. *Depew*, 28 *Barb.* 44. *The People* v. *Highway Comm'rs of Seward*, 27 *id.* 94. *Dempsey* v. *Tylee*, 3 *Duer*, 74. *Stoughton* v. *Lynch*, 2 *John. Ch. Rep.* 209.)

*E. L. Fursman*, also for the relators. I. The act under which these proceedings are had, for an assessment of the value of the reversionary.interest of the respondents in the lands formerly used by the Saratoga and Hadley plank road, after its abandonment by the company, (*Chap.* 25 *of Laws of* 1864,) is unconstitutional. Section 16 of article 3 of the constitution of the state provides, that " no private or local bills which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." This act is strictly local. It relates solely to the county of Saratoga, and has no operation anywhere else. 1st. It embraces more than one subject. The first section provides that whenever any plank road company, having acquired the right of way across private lands by an ·appraisal and payment of damages, pursuant to the general act of 1847, shall abandon the same, or when its charter shall expire or become forfeited, such plank road and its right of way shall become and the same is declared to be a public highway. The second section makes it the duty of the commissioners of highways of the town to take the same measures to appraise the reversionary interest of the owners whose lands have been taken for plank road purposes, as are required to be taken in laying out new highways; and that the damages thus ascertained shall be a town charge, to be levied and collected in the same manner as other town charges for laying out highways. The subjects legislated upon in these two sections are not the same. Nor does the one necessarily grow out of the other. These lands were actually paid for by the company, in 1850, under an assessment, pursuant to the statute of 1847. Declaring them to become upon abandonment a public highway, and providing for an assessment, collection and payment of the value of the reversionary interests of the adjoining proprietors, and the manner in which that is to be accomplished, are two different things. 2d. Neither of the subjects mentioned in the body of the act are ex-

pressed in its title. The act is entitled "An act in rela-tion to the plank road law in the county of Saratoga." Neither of the two sections of the act mention any plank road law in the county of Saratoga. The act does not pretend to be an amendment of or an addition to any plank road law in that county. It does not even purport to be an amendment of the general act of 1847. It does not change, affect, nor in any respect alter or interfere with any plank road law. It simply declares that abandoned plank roads in Saratoga county shall become highways, and provides for an assessment and collection of damages to reversionary interests. Neither of these subjects are referred to in the slightest manner in the title. It is there-fore in conflict with the constitution. All the proceedings had under the act are without authority, and the jury acted without jurisdiction. (*Const. of N. Y. art.* 3, § 16. *Laws of 1864, ch.* 25, *pp.* 46, 47. *Town of Fishkill* v. *Fishkill and B. Plank Road,* 22 *Barb.* 634, 641–3.) The commis-sioners of highways themselves acted without authority, and had no jurisdiction to procure the appraisal by the persons appointed by the county judge. It follows that the appeal was equally without authority and jurisdiction. (*Harrington* v. *People,* 6 *Barb.* 607, 611. *People* v. *Eggle-ston,* 13 *How.* 123.)

II. The service of the notice of appeal from the first appraisal, demanding a reassessment by a jury, and of the time and place of the drawing of such jury, was insuffi-cient and not properly made. Neither Lyman or Row-land (two of the commissioners) were served with the notice, nor did they have any knowlege of any appeal, nor of the drawing of the jury, until after it had been drawn. Notice was served on only one commissioner, viz. Mitchell, the father-in-law of one of the land owners. They were entitled to be present at the drawing of the jury, but were deprived of this right by want of notice. The statute authorizing an appeal from the appraisal of commissioners

The People *v.* Lawrence.

appointed by the county judge, (3 *Edm. Stat. at Large, p.* 312, § 3,) provides that such appeal may be had within twenty days after filing such appraisal, by serving a written notice of the same on the "commissioner or commissioners of highways, as the case may be," asking for a jury, and specifying the time and place of the drawing of such jury. It is provided by law that the town electors may determine at their annual town meeting whether there shall be *one* or *three* commissioners of highways in the town, and the number decided upon shall be balloted for and chosen, &c. (3 *Edm. Stat. at Large, p.* 311, § 2.) Where there are *three* commissioners chosen, it is necessary that *all* should meet and deliberate, or at least that all should be *notified,* in order to make any official act of even a majority of them valid. Unless this rule is complied with, any order made by two of them is void. (*Stewart* v. *Wallis,* 30 *Barb.* 344. *Marble* v. *Whitney,* 28 *N. Y. Rep.* 297. 36 *id.* 441.) The language of the statute above referred to is peculiar. Service is to be made "upon the *commissioner* or *commissioners* of highways, as the case may be." The legislature intended that where there is but *one* commissioner, service shall be made on him; but that where there are *three,* service shall be made on each of the three. Otherwise they would have said simply that such service should be made " on the commissioners of highways." This would have covered a case where there is only *one* commissioner, and would have rendered sufficient a service upon *one* only in a case where there are *three* commissioners. But instead of this, they designate and *separate* the two cases. They provide that in case there is only *one,* service may be made on the *commissioner;* and in case there are three, service shall be made on the " *commissioners,*" meaning each of the commissioners. And the reason of this is a sensible one. One of the commissioners cannot *act* alone; two cannot act without the third is notified. If a party desires to appeal from the result of their action, he must put them

in a position where they are called upon to act, and to act properly and legally in reference to such appeal. No proper and legal action can be taken by them until all have met and deliberated, or been notified, and hence he must serve his notice upon all. The service of this notice is necessary to make the appeal, and to confer jurisdiction upon the jury, which is, in this case, the appellate tribunal. Therefore, even if the law of 1864 is constitutional, and the action of the commissioners under it in procuring the assessment by the appraisers appointed by the county judge valid, the appeal by the land owners to and the reassessment of damages by the jury, are without jurisdiction and void.

III. The assessment was made by the jury upon a wrong basis, and the amounts awarded to the several respondents are excessive. These respondents had already received " $3000 " from the Saratoga and Hadley Plank Road Company for their damages consequent upon the appropriation of this " way" to a public use. In arriving at that sum, regard was had to the value of fencing against the plank road, and the inconvenience occasioned to the owners by having to cross and recross a public road, in the use and enjoyment of their farms. The only right acquired by the company by this appropriation of these lands in 1850, and the assessment and payment of these damages, was an easement, the right to use it as a public way. The fee subject to this easement remained in the land owners. They still owned the reversion, and upon abandonment by the company or forfeiture of its charter, they became as completely and absolutely the owners of the roadway as they were before its use was appropriated by the company. The law of 1864 declared that upon such abandonment or forfeiture by the company, their road and "*its rights of way*" should become and be a public highway, and it was then made the duty of the commissioners of highways " to take the same measures for *appraising the reversionary*

*interests of the owners,"* as are required in the case of laying out highways, &c. But upon appraisal and payment of the value of this reversionary interest, the town would not become the owner of the fee. A town, though a *quasi* corporation, cannot take and hold the fee of real estate, whether by gift, grant, devise or purchase. This proceeding does not, therefore, vest in the town the absolute title to this roadway, but only the same easement theretofore owned and enjoyed by the company. The fee of the road continues in the original owners. Upon its ceasing to be a roadway it reverts to them. Their estate in reversion is just as perfect after it has become a town highway as it was while it was a plank road. (8 *John.* 385. 9 *id.* 73.) When the public cease to use it as a highway, they are again the absolute owners of the soil unincumbered by any easement. Hence, by this law, the town of Greenfield is required to pay for what it does not receive; and if any effect is to be given the statute at all, the amount of damages should be only nominal. The expenses of making and maintaining the fences along the road, damages on account of the inconvenience of crossing and recrossing the same, and the diminished value of the remainder of the several farms by reason of the road running through them, (of all which evidence was allowed to be given to the jury under objection, and was doubtless considered by them in making their assessment,) formed an improper basis upon which to found their award. But it may be said that this view of the law deprives it of all consequence, and makes it an absurdity. Then, to give it the best reasonable construction that can be put upon it, and assuming that the town can be vested with the whole title by this proceeding, it is clear from the language of this statute that the legislature considered (what was in fact true) that on laying out the plank road originally, the land owners were fully compensated for the appropriation of their lands to the public use, the disadvantage of being

compelled to fence against it, and the inconvenience of crossing and recrossing it, incident to its use as a road. The first section declares that " such plank road, and *its right of way*, shall become and is hereby declared a public highway;" that is, the right of the plank road company to the use of these lands shall be vested in the public. The land owners were paid by the company for the inconvenience resulting from the use of these lands as a public way for all coming time (if this road should so long continue.) In the absence of an express provision in the law directing it to be done, it would be unfair and inequitable to the public to compel them to pay the land owners damages on account of a thing for which they had already been fully compensated. The legislature, in the first section, grants to the public the entire right of way possessed by the company; but it is a settled principle that on the termination of the existence of a corporation, the real estate held by it at the time of its dissolution, and acquired by it for a public use under the right of eminent domain, reverts to the original owners. To continue the use of the lands as a public highway would impair the value of this reversionary interest, which was not parted with nor paid for when the plank road was laid out; and, if the first section stood alone, would be taking private property for public use without just compensation. To remedy this, the legislature passed the second section of the act, providing that the commissioners of highways shall cause to be appraised, not the damages caused by the construction of the highway, nor the expense of fencing against and the inconvenience of crossing it, incident to its construction, but *the value of this reversionary interest alone.* It is therefore apparent that this law intends to provide, and does provide, that the right of the plank road company to the use of this road, fenced as it already is by the land owners, and with the already existing inconvenience of crossing and recrossing it, purchased and paid for by such com-

The People *v.* Lawrence.

pany, shall vest in the public; that the land owners shall only be paid for the sole interest which they did not sell to the company, and for which they were not compensated by it, viz., the expectation that the title would revert to them at the expiration or forfeiture of its charter. The jury, therefore, erred in considering and assessing the value of any thing more than this naked reversionary interest, and the whole assessment is founded on an erroneous basis. This court has full power to review this question upon the writ. (*Mullins* v. *The People*, 24 *N. Y. Rep.* 399, 402.)

*Wm. Hay*, for the respondents. I. Service of notice of appeal personally on one commissioner was sufficient; it being addressed to all of them by their name of office; their individual or Christian and surnames being unnecessary. If in the statute (*See* 1 *R. S. 4th ed. p.* 1043, § 78) the alternative singular number applies to a case where there is but one commissioner, personal service, nevertheless, on one for all suffices; the words, " as the case may be," relating to the acting, moving or appealing *party*, a word which, with the prefix *opposite*, is applicable to several commissioners, who therefore constitute but *one party*, already appearing as such in the action or litigation pending before commissioners appointed on their own application. Commissioner Mitchell's act of receiving the notice was *ministerial* only, and could therefore be done by him alone, without the concurrence of his associates, who had no discretion to exercise and could not refuse. The commissioners are *quasi* a corporation, and notice to one member or corporator, director or officer, or agent, whose duty relates to that subject, is enough, by whatever name known, be it president, or cashier, or other title. Even if those commissioners were mere *agents* and the town their principal, notice to an agent transacting the business, within scope of his authority, is enough, and every other agent

need not be notified. Commissioners, however, more resemble executors, copartners, joint tenants, (as distinguished from tenants in common,) and especially attorneys composing a law firm, service on any of whom, of *one* notice, is all-sufficient. (*Owners* v. *Mayor &c. of Albany*, 15 *Wend.* 374. *U. S. Bank* v. *Davis and others*, 2 *Hill*, 451. *North River Bank* v. *Aymar*, 3 *id.* 263. 1 *Hall*, 480. *National Bank* v. *Norton*, 1 *Hill*, 572. *Field* v. *Mayor of New York*, 2 *Seld.* 179. *Fulton Bank* v. *N. Y. and Sharon Canal Co.*, 4 *Paige*, 127. 4 *Abbott's Digest*, 189.) The case of *Fishkill* v. *Fishkill and Beekman Plank Road Co.*, (22 *Barb.* 634,) proves that towns are merely political or civil divisions, and have no "rights or duties in respect to highways." *A fortiori* commissioners of highways are officially *quasi* a corporate body, and to suppose that notices must be served on each and every member of an aggregate corporation or association is absurd. It would often be impracticable and usually so inconvenient as to impede business.

II. The jury had jurisdiction derived from the commissioners' initiatory application to the county judge and all consequent proceedings, without any proof to them of the regularity of those proceedings as to contents and service of notices and acts of town clerks &c., the law presuming that in all interlocutory proceedings, public officers have performed their duty, and that too on proper information or due proof. Hence a provision contained in the Session Laws of 1847, (page 223, § 24,) but omitted in the revised statutes regulating this appeal, which is an informal, summary, neighborhood affair, unlike a regularly constructed action *in curia*. It more resembles an arbitration ordaining its own rules and practice, and statutory requirements relating to it are precautionary and *directory*, not *mandatory* nor jurisdictional, and disregard of them is merely erroneous, not *irregularity*.

III. The justice's powers are limited to those specified,

The People *v.* Lawrence.

(incidental being thereby excluded,) as they were not in the act of 1847. (*Sess. Laws of* 1847, *p.* 222, § 22, *and preceding sections.*) He had no authority to coerce attendance of the twelfth juror or supply his place, as was provided for deficiency of referees and commissioners (but not jurors) in 1 Revised Statutes, page 1044, section 84. Besides, jurors enough appeared for a draft of six, according to the practice or custom of all courts. Whoever heard that a circuit court (even with power of coercing attendance and ordering either a new draft by the clerk, or tales summoned by the sheriff) cannot draw a jury until the original list or panel is completely full, especially by attendance of every person named in it?

IV. The subject of appraisal or reassessment, whether as compensation or damages, direct or incidental, is the whole estate or entire absolute ownership in fee simple, or, perhaps, allodium of the four rods plank road width. This will appear from an answer to the following questions: First inquiry—Before the first day of May, 1867, how was the entire ownership of the plank road divided? Answer—The plank road company owned the ties, planks and other material, so much of the ground as was necessary—by which is meant reasonably convenient for their purposes—and a right of way (*Town of Galen* v. *Clyde and Rose Plank Road Co.*, 27 *Barb.* 543) or of passage, being a species of easement during the continuance of their charter, (less, of course, than thirty years,) and at its termination the privilege of removing all they had put there except fixtures. All the residue of the whole estate and every subject of ownership, especially fences, which are fixtures, or part of the realty, (and never assets,) belonged to the land owner, particularly fences on his own land and outside of the four rods. (*See* 1 *R. S.* 525, § 126 ; *Williams* v. *Kenney*, 14 *Barb.* 629 ; *Jackson* v. *Hathaway*, 15 *John.* 447 ; and 1 *Wend.* 262, *concerning rights and privileges in præsenti; Dunham* v. *Williams*, 36 *Barb.* 136 ; and *Kelsey*

v. *King*, 32 *id.* 410.) Second inquiry—On the 1st day of May, 1867, the plank road company abandoned that part of their road, and thereby (without any hindrance from the statute of 1864) and at that instant, their whole interest reverted or returned to, and became vested and operative in the land owner by *extinguishment* of the company's right of way, not *merger*, because the land owner derived from no other source any lesser estate which merger implies, just as *life* is presupposed of drowning. Even the legislature could not impair the obligation of the plank road contract, and certainly did not by the act of 1864, to prevent that extinguishment or suspend the consequent reverter, the reversion being executed in possession. Our statute defining an estate in reversion is declaratory of the common law. "A reversion," writes Kent, "is the return of land to the grantor and his heirs, after the grant is over, or, according to the formal definition of the New York Revised Statutes, it is the residue of an estate left in the grantor, or his heirs, or in the heirs of a testator, commencing in *possession* on the determination of a *particular* estate granted or devised." "A reversion, in its legal signification, is applicable only to an estate which remains in the grantor and his heirs, and which is to take effect in *possession* upon the determination &c. of an outstanding *particular* estate." A right to re-enter and resume the possession for the breach of a condition, is not a reversion. (*Phœnix* v. *Com. Emigration*, 12 *How. Pr.* 1. 2 *Black. Com.* 175.) The land owner's reversion that formerly subsisted in this case as to the plank road company's particular estate, was by no means subject to the act of 1864; but in the provision of which all parties concerned have, notwithstanding, acquiesced. Without such acquiescence in the nature of consent, the legislature, exercising one attribute of sovereignty, or "eminent right of domain," might dispense with the usual preliminaries to a certain necessity, and declare (as in conclusion of section 1 of the

The People v. Lawrence.

act of 1864) that "such plank road and its former right of way shall become, and is hereby declared a public highway." So, however, to transform the road, just compensation (not under-valuation, or valuation of part only) must be provided; the change being material as to duration, forever in lieu of less than thirty years, and the purpose a public common highway, instead of a plank road, thereby enhancing damages. The land owner, too, might desire the advantages of a plank road or railroad, and be opposed to a second common highway cutting up his farm, over which, and parallel and near, a highway already passed his door from the same *termini a quo* and *ad quem*. Those facts and circumstances, and many similar considerations too numerous to be here specified, would necessarily enter into the damages or compensation; words which should therefore have been incorporated in the statute instead of "*reversionary interest*," which has there no significance, unless declaring the plank road and its former right of way a public highway, mean to leave in the land owner (e. g. on discontinuance of that public highway) the unincumbered and unqualified title to the land; notwithstanding the questionable opinion delivered in *Heath* v. *Barman*, (49 *Barb*. 496,) under the statute of 1854, instead of that of 1864, which expressly provides for compensation to the land owners. That, however, is just what the people of this State never take, and do not intend to acquire. Yet, on a literal interpretation of the 1864-act, that *reversionary interest* is all the State either bargains or proposes to pay for, leaving the road-bed, while it is used as a public highway, without the least compensation to the land owner. This view of the subject involves the sheer absurdity that this State would have no right to use the four rods wide as a public highway until they had abandoned it for that purpose; and worse, it would involve the injustice of paying nothing for the public highway bed while they (for centuries if you please) may continue to use it as such;

and after (if ever) it ceased to be so used, and all necessity for ownership by the State had ceased, it would become unconstitutionally a part of (not the public highway but of) the public domain, taken without necessity or authority, or adequate compensation. This reflection brings us to the real point in this case without reference to the misnomer "reversionary interest," an error that may be corrected by expunging as surplusage or expletive the word "reversionary," which is incongruous when considered in connection with the rest of the statute and circumstances of this case. By the plank road company's abandonment in 1867, the limitation or condition of defeasance (on their own deliberate and recorded act) occurred, and all their title thereupon ceased; for (*see Sess. Laws of* 1847, *pp.* 224, 225, §§ 28 *and* 30) the plank road company had become, on payment or tender of compensation, damages, costs and expenses, *entitled* only "to take and hold such lands to it and to its assigns so long as it shall be used for the purposes of such a road as such company was formed to construct," and no longer. Nor can that plank road company, on such voluntary abandonment or otherwise, recover back from a land owner what they paid to him as such compensation or damages; nor could their assigns, (which the people are not;) and if, as a condition of allowing part abandonment of the plank road, the people had become assigns, they could not so have recovered. Then why should the State do *indirectly*, by deducting such last mentioned compensation from what they pay for land to be used as a public highway, when they could not accomplish that injustice *directly*. The truth is that all plank road operations are *quoad hoc*, to all intents and purposes ended, as per the last above cited statute, on its abandonment, and no right to use the land for a plank road can be revived even for the State; much less can a right to use it as common public highway, forever, be substituted. Besides thus surrendering all its claims, the plank road

company's *interest* was only *possessory*, not *reversionary*, and therefore not the subject of appraisal for any purpose whatever; nor can any of its claims enure to the benefit of this State. When the act of 1864 provides for appraising the land owner's reversionary interest at a just compensation, it must be a full equivalent for what the land owner loses, (incidental inconveniences, such as separation of fields and deprivation of water in some of them, &c., inclusive,) and for what the public takes. Did that public when directing an appraisal, in the same way in which, and with the same purpose for which, damages are appraised "in laying out public highways in this State," intend to take and pay for the land owner's right to use and protect the land for all legal purposes, not inconsistent with its public use as a highway and to retain his right to its *reverter* (of which there is at least a probability) on discontinuance as a highway? Certainly not; but on the contrary to leave those rights with the land owner, and to take and pay for the use (technically usufruct) of the highway as such only. Certainly, therefore, a reasonable common-sense interpretation of the statute (on every known rule of construction to ascertain legislative intention) requires the same appraisal as if, instead of informally declaring the land a highway, it had been (as it virtually is) an original laying out in the usual mode, by town officers, over land which had never been used (six years or at all) for a plank road or other public servitude, nor protected or guarded against by any fence. At all events, whether in their statutory connection the words "reversionary interest" mean something or nothing, any thing or everything, they must be so expounded (if operative at all) as to give to the land owner a full indemnity, and consequently confer on the State right to a complete present use of the land as a public highway. Such perfect indemnity the commissioners, embarrassed by the statute phraseology did not award, and the jury unrestricted by the partic-

ular statute, but acting under the general highway act, assessed no more; for, having an actual view, and after hearing the allegations and proof of every party, they found a verdict which may be reconciled to any view of the subject, whether including or excluding the value of fences and repairs. But be that as it may, those fences (which probably occasioned, if not caused, this controversy) belonged exclusively to the land owner (who had perfect right to remove the rails and restore his fields or inclosures so as to include the former plank road-bed,) and whether allowed for by the jury, (as by the commissioners had slightly been,) in addition to compensation for the land, does not appear; nor can that be inferred from the testimony admitted, because there was no power to exclude nor to reject arithmetical calculations, nor to confine the evidence strictly to facts, nor to limit opinions to experts. Those fences, whether remaining there in whole or part or to be builded, were proper subjects for allowance, and constitute what is called in the papers an *element* of damages. Independent of constitutional provisions, (see U. S. constitution, amendments, article 5, and N. Y. constitution, article 1, sections 6 and 7,) the legislature cannot, upon principles of natural right, without just compensation, take private property, (which this four rods wide plot was, after the plank road company's abandonment of it,) even for public use. Such governmental taking is indeed the highest act of sovereignty, and can be tolerated on dedication by the owner only, or by equivalent necessity (the supreme law) and perfect compensation, without any rebate for benefits to be derived to that owner from the public improvement. (*See Session Laws of* 1847, *page* 222, *section* 23.) Numerous cases are cited in *Abbott's Digest*, volume 1, page 639, and especially pertinent and decisive is the adjudication in *Beekman* v. *Saratoga and Schenectady Railroad Co.*, (3 *Paige*, 47.)

V. The certiorari in this case is at common law, and

The People *v.* Lawrence.

limits inquiry to jurisdiction; but cannot reach interlocutory proceedings, or a verdict founded on conflicting evidence; especially is this correct concerning the reception and rejection of evidence. (*The People* v. *First Judge of Columbia Co.*, 2 *Hill*, 398. *Owners* v. *Albany*, 15 *Wend.* 374, *above cited.*) " The act of drawing jurors, &c., in highway cases, is not a *judicial* act, and a certiorari does not lie to review it." (*Pearsall* v. *Commissioners of North Hempstead*, 17 *Wend.* 15. *Matter of Mount Morris Square*, 2 *Hill*, 14.) " If, on a common law certiorari, the court can go beyond the question of jurisdiction and review questions of law, it is certain it cannot review questions of fact." (*Allyn* v. *Commissioners of Schodack*, 19 *Wend.* 342. *People* v. *Overseers of Ontario*, 15 *Barb.* 282.) And see numerous adjudications referred to in 1 *Abbott's Digest*, pages 543, 544 and 545, too numerous to be cited. " The return to a common law certiorari does not properly embrace the evidence, and though this be in fact returned, the court will not re-examine the merits." (*People ex rel. Cook* v. *Board of Police*, 40 *Barb.* 626. *People ex rel. Savage* v. *Board of Health*, 33 *id.* 344. *People ex rel. Van Rensselaer* v. *Van Alstyne*, 32 *id.* 131.) In *Stone* v. *Mayor &c. of New York*, (25 *Wend.* 157,) Judge Paige's elaborate opinion turns on and terminates in a mere matter of *jurisdiction* concerning an erroneous construction of a statute or incorrect principle of assessment. (*Matter of Bruni*, 1 *Barb.* 187.) This doctrine is confirmed by perusal of *The People* v. *Van Alstyne*, (32 *Barb.* 131,) the Claverack case, on which the Greenfield commissioners principally rely. (*See opinion of Cowen, J.*, *in Ex parte Mayor &c. of Albany*, 23 *Wend.* 276.) *Carter* v. *Newbold* (7 *How.* 166) is a mere *dictum;* being judicial legislation *solus*. *Anderson* v. *Prindle* (23 *Wend.* 616) was not a common law certiorari, except in part.

VI. The act of 1864 is constitutional; but if it was otherwise, objections or reasons which render it invalid must be specified; and they would (even in an assignment

of errors) come too late, and cannot now be heard, especially from the highway commissioners who instituted or originated these proceedings under it and by virtue (or at least color) of it; the land owners merely ·followed suit, and acted accordingly. So all concerned in this litigation, and particularly those commissioners of highways who initiated the proceedings, have expressly (constructively would suffice) waived those objections, and are thereby estopped in that behalf. The land owners are also estopped—wherefore there is required mutuality—they having waived available objections, due process of law, and even their undoubted right (arising out of natural justice) to be pre-notified and heard on appointment, by a county judge, of appraising commissioners. *Embury* v. *Conner* (3 *N. Y. Rep.* 511) shows that even *consent* may be presumed; and also that a statute should (if possible) be so construed as to render (or rather leave) it constitutional and otherwise valid; e. g. the act of 1864 should, in reference to the misapplied phrase, "reversionary interest," and in other respects, be so interpreted as to furnish full compensation (whatever that may be) for such interest appropriated to the public use. (*Van Hook* v. *Whitlock*, 26 *Wend.* 43. *Lee* v. *Tillotson*, 24 *id.* 337. *Baker* v. *Braenan*, 6 *Hill*, 47. *Tombs* v. *Rochester &c. R. R. Co.*, 18 *Barb.* 583. *Hayward* v. *Mayor of New York*, 8 *id.* 486.) "So a party having land taken for a public improvement, who has taken a part in an assessment of his damages in the mode prescribed by the statute authorizing the improvement, cannot, after an award, object on the ground that such mode is in violation of the constitution." (*People* v. *Murray*, 5 *Hill*, 468.) Highway commissioners cannot blow hot and cold at the same breath. If they adopt part of a statute to promote their own selfish purposes, they cannot reject that same identical part when it does not comport with those purposes. They have elected, and are thereby concluded. Otherwise in a reported case, (*People* v. *Town of Seward*,

27 *Barb.* 94,) where they were naked trespassers, (as was also the constable in *Tucker* v. *Malloy,* 48 *Barb.* 85,) acting in good faith. There they might either pause or retract and tender amends. In this case their *locus penitentiæ* was before the verdict of an impartial jury had been rendered. That should have been an end of strife; but these Greenfield commissioners have, instead of seeking such peace, by the way, suffered the sun to go, frequently, down upon their wrath. (*Wood* v. *Livingston,* 11 *John.* 36. *Steam Nav. Co.* v. *Weed,* 17 *Barb.* 378. *Palmer* v. *Smith,* 6 *Seld.* 303. *Peck* v. *Burr, Id.* 294. *Walrath* v. *Redfield,* 4 *Smith,* 457. *Ford* v. *Townsend,* 1 *Abb. Pr. N. S.* 159. *Decker* v. *Anderson,* 39 *Barb.* 346. *Root* v. *Wagner,* 30 *N. Y. Rep.* 9. *Stackpole* v. *Robbins,* 47 *Barb.* 212. *Chapman* v. *Com'rs of Gates,* 46 *id.* 313.)

*By the Court,* JAMES, J. The writ of certiorari was proper in this case. It is a writ directed to the judges or officers of inferior courts or tribunals, commanding them to return the record of a cause or proceeding pending or had before them. In its office of removing final adjudications for review, it possesses all the characteristics of a writ of error under our former system of practice, and performs the same office as to inferior summary tribunals that a writ of error did to an inferior court of record. The common law certiorari, proper, removes only the record, or entry in the nature of a record, of the proceedings of the court below, whereby only the jurisdiction and the regularity of its proceedings are reviewed. But when the writ is authorized by statute, the authority of the court is not limited to questions of jurisdiction and regularity; it has power also to examine upon the merits every decision of the court, or officer, upon questions of law, and to look into the evidence, and affirm, reverse or quash the proceedings, as justice shall require.

The People *v.* Lawrence.

(2 *Seld.* 309, 383.) The writ in this case was authorized by statute.

In 1864 the legislature enacted that "if any plank road in Saratoga county, used for six years, should be abandoned, or its charter expire by its own limitation or forfeiture, such plank road, and its right of way, should become, and was thereby declared, a public highway." It then made it the duty of the commissioners of highways of the town to take the same measures for appraising the reversionary interest of the owners whose lands were taken for such plank road, &c., as are required by the statute in relation to the appraisal of damages for laying out public highways, &c.

It is first claimed that this act is unconstitutional, and that it came into existence by mistake. We cannot say as to any mistake in its being enacted, but we are quite sure it is not unconstitutional. It does not seem to be in conflict with any express provision of the constitution, nor an infringement of any natural right. Statutes free from these objections cannot be declared void by the courts. Within those limits the legislative will is sovereign.

It is also claimed that the jury had no jurisdiction to act, because the notice of appeal was not properly served. The statute, to which the act of 1864 refers as a guide for appraising the reversionary interest in cases of this kind, provides, first, for the appointment of commissioners, and then any person conceiving himself aggrieved by their valuation may appeal, by signifying the same by notice in writing, and serving the same on the town clerk and upon the commissioner, or commissioners, and asking for a jury to reassess the damages. The act then provides for drawing twelve persons from an adjoining town, as jurors; summoning them to attend at a place to be specified; the drawing of six names from the panel;

these to view the premises, hear the evidence, and report. Thus the appeal from an award of the commissioners of assessment selected by the court is by written notice of appeal, with a demand for a jury, &c.; and this notice is required to be served on the town clerk, and on the opposite party.

In 1845 an act was passed authorizing towns to reduce the number of highway commissioners to one. Many towns in the State availed themselves of that privilege. Under that act, persons desiring a reassessment of damages for land taken for highway purposes, were to signify the same by serving a written notice on a justice of the peace of the town, demanding a jury. Said act was amended in 1847, in regard to this matter of reassessment, and fixed as the law now stands. Therefore the fact that some towns, in 1847, had but one highway commissioner, while others had three, would imply an intent and purpose in those words of the amended act, " commissioner or commissioners," and force the conviction that the legislature intended, as essential to an appeal in such case, service of notice on each and all the commissioners of highways, as the case might be, rather than on the board.

There are reasons why each commissioner should have notice of an appeal. They can only act when convened as a board, all being present or notified of a meeting. Their official territory is limited, and nearly every case arising for the action of the board concerns the neighbor or relative of one or more of the commissioners, when more than one. If a service upon one were sufficient, it would put it in the power of that one, if any motive existed, by omitting or forgetting to notify his associates, and not appearing himself, to leave the town in default, and allow a jury of reappraisement to be drawn without opposition. But the legislature has said, in very plain words, what is necessary to be done to entitle an aggrieved party to appeal; and

even if the courts are unable to find a reason for all its requirements, yet such conditions as are imposed cannot be dispensed with, as they form part of the conditions conferring jurisdiction. This notice and service is a condition precedent; without compliance with it, no authority exists for drawing and summoning a panel of jurors; without it the justice had no authority in the premises, nor the jurors summoned and drawn any jurisdiction of the subject matter.

This view of the question of service of notice entirely disposes of the present case; but as the case may come up again, I will examine another question raised.

The matter most discussed on the argument was the basis of appraisement adopted by the jury, viz., in taking into consideration the cost of fencing the road, keeping the fences in repair, and the inconvenience to the use of the land in having to cross and recross such road.

The plank road company had but an easement in their roadway; the fee was in the land owners. On its abandonment, the possession of the land, freed of the easement, would have reverted to the original owner, but for the aforesaid statute. In its wisdom the legislature has seen fit to exercise its power of eminent domain, and dedicate abandoned plank roads to the public. First, in 1838, but without making any provision for compensating the original owner; again in 1854, without any provision for compensation. For this omission the constitutionality of the acts of 1838 and 1854 was questioned. The act of 1864, under which this proceeding was instituted, avoided that difficulty, by making it the duty of the highway commissioners to have the reversionary interest of the original land owner appraised and paid for.

What then was the nature and extent of the interest which reverted to the original owner on the abandonment of this plank road? It is urged that because the

original grantor owns the fences along its line, because he has been paid by the plank road company for making and keeping them in repair, as well as for the land, he has no interest except the naked right of reversion, on the actual discontinuance and closing up of the road; that as a town cannot take a fee in the land over which a highway passes, but only an easement, the land owner's interest of reversion remains undisturbed; and therefore he sustains only nominal damages by reason of an abandoned plank roadway being declared a public way.

Such was not the legislative intent, nor a fair construction of the statute. All acts should have a reasonable construction, and their intent followed if it can be ascertained from the act.

A reversionary interest is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. The particular estate granted out by the land owner in this case was an easement for a plank road-bed; on the determination of that particular estate, the land owner was entitled to possession; thus having the fee and being entitled to possession, his reversionary interest included everything; the soil, the fences thereon, the right of way, and all the advantages, if any, arising from its former use. It was this property which the legislature dedicated to the public, and it was this interest which was required to be appraised and compensated for. I am therefore of the opinion that the jury did not err in their basis of estimate, although they may have erred in the value of the items forming that estimate.

Had the appeal from the appraisement of the commissioners appointed by the county judge been served on all the highway commissioners, so as to confer jurisdiction on the town clerk to draw a panel of jurors, a justice of the peace to summons, draw and impannel a jury, and the

jury to act, their action would not be disturbed; but, as it is, as jurisdiction could only be conferred on a jury to act in the manner pointed out by statute, the appraisement must be reversed.

[WARREN GENERAL TERM, July 13, 1869. *James, Rosekrans, Potter* and *Bockes,* Justices.]